UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMILE SHILLY,

                       Plaintiff,             Civil Action No. 20-11726

v.                                 Mark A. Goldsmith
                                      United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,                  David R. Grand
                                      United States Magistrate Judge

                       Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 9, 12)

Plaintiff Emile Shilly ("Shilly") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 9, 12), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Shilly is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 12)** be **GRANTED**, Shilly's Motion for Summary Judgment **(ECF No. 9)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. §

405(g), the ALJ's decision be **AFFIRMED**.

## II.   REPORT

### A.   Background

Shilly was 57 years old at the time of his alleged disability onset.  (Tr. 19).  At 5'7" tall, he weighed approximately 185 pounds during the relevant time period.  (Tr. 375).  He started but did not complete high school in his home country.  (Tr. 47).  He immigrated to the United States in 1993 and reads and writes in English.  (*Id.*).  Previously, he owned and managed Shilly Imported Foods, a fruit market, grocery, and bakery. (Tr. 48-49).  He has a history of back pain and underwent surgery on his lower back in 2001, which was originally successfully at treating his pain.  (Tr. 54-55).  However, he alleges that his back pain returned in 2015 and intensified to the point where he had to close his business and stop working in 2018.  (Tr 55.)  He now alleges disability as a result of back pain, neck pain, and depression. (Tr. 45-46, 213, 276.)

After Shilly's application for SSI was denied at the initial level on December 8, 2016 (Tr. 97-101), he timely requested an administrative hearing, which was held on June 11, 2018, before ALJ Patricia McKay.  (Tr. 40-69).  Shilly, who was represented by attorney Randall L. Mansour, testified at the hearing, as did vocational expert ("VE") Carol Mosley.  (*Id.*).  On January 8, 2020, the ALJ issued a written decision finding that Shilly is not disabled under the Act.  (Tr. 8-21).  On May 4, 2020, the Appeals Council denied review.  (Tr. 1-4).  Shilly timely filed for judicial review of the final decision on June 29, 2020.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Shilly's

medical record, function and disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.      The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

claimant can perform, in view of his or her age, education, and work
experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich.

Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245

F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first

four steps ….  If the analysis reaches the fifth step without a finding that claimant is not

disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human

Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Shilly is not

disabled under the Act.  At Step One, the ALJ found that Shilly has not engaged in

substantial gainful activity since September 1, 2018.  (Tr. 13).  At Step Two, the ALJ found

that Shilly has the severe impairments of "degenerative disc disease of the lumbar spine,

status/post laminectomy and fusion; and degenerative disc disease of the cervical spine."

(*Id.*).  He also found that Shilly had several non-severe impairments, most notably

depression. (*Id.*).  At Step Three, the ALJ found that Shilly's impairments, whether

considered alone or in combination, do not meet or medically equal a listed impairment.

(Tr. 16).

The ALJ then assessed Shilly's residual functional capacity ("RFC"), concluding

that he is capable of performing work at light exertional levels, with the following

limitations: occasional pushing and pulling with the upper extremities; no standing more

than 20 minutes at a time; no climbing ladders, ropes, or scaffolds; frequent balancing and

occasional engagement in all other postural activities; no overhead reaching; and must avoid hazards including heights, vibration and operation of heavy machinery. (Tr. 16).

At Step Four, the ALJ found that Shilly is unable to perform his past relevant work as a fruit market manager/owner or baker. (Tr. 19). At Step Five, the ALJ determined that Shilly is capable of performing the jobs of payroll clerk (170,000 jobs nationally) and order clerk (200,000 jobs). (Tr. 20). As a result, the ALJ concluded that Shilly is not disabled under the Act. (*Id.*).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).

The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6ᵗʰ Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.    Analysis

In his motion for summary judgment, Shilly argues that the ALJ erred in finding his depression to be non-severe and in weighing Shilly's hearing testimony and the medical opinions in the record. Shilly argues that these errors resulted in the ALJ erroneously formulating his RFC. (ECF No. 12, PageID.641-45.)[1] Each of these arguments is

---

[1] Shilly also attempts to shift the burden on this issue to the Commissioner by portraying the allegedly erroneous RFC as a Step Five issue. *See* (ECF No. 9, PageID.445). Generally, the

addressed below.

    *1.    The ALJ's Finding that Shilly's Depression is Not a Severe Impairment is Supported by Substantial Evidence*

At Step Two of the sequential analysis, the ALJ considered Shilly's depression but found this impairment non-severe.[2] (Tr. 19-20.)  The applicable Social Security regulations define a severe impairment as one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  The claimant – not the ALJ – bears the burden of showing that he has such an impairment *and* that the impairment was severe or could be expected to be severe for at least twelve consecutive months.  *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment …

---

claimant holds the burden of showing error on one of the first four steps of the disability decision process, namely, whether the claimant faces any severe impairments, what limitations flow from those impairments, and whether those limitations would prevent the claimant from performing his past relevant work.  At Step Five, the Commissioner must show that there are additional jobs in the national economy that could be performed by a worker with the claimant's residual functional capacity.  It is at Step Five that the burden of proof shifts from the claimant to the Commissioner. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d at 1110.  An argument that the Commissioner erred at Step Five would challenge either the assertion that someone with the residual functional capacity determined by the ALJ would not in fact be able to perform the jobs identified, that the claimant's education or prior work history would not actually be suitable for the jobs identified, or that those jobs are not in fact practically available in the national economy.  Instead, Shilly recasts arguments at Steps One through Four as Step Five arguments by arguing that earlier errors marred the ALJ's Step Five determination.  Thus, the undersigned will address those arguments at the appropriate steps with the burden placed on Shilly.

[2] Shilly argues that the ALJ incorrectly decided that his depression was non-severe based on an erroneous finding that the impairment did not meet the duration requirement in § 404.1509.  A close reading of the ALJ's decision shows that this is incorrect.  The ALJ stated that "*[a]rguably*, the claimant does not meet the 12-month duration requirement for depression to be considered a severe impairment." (Tr. 15) (emphasis added).  The ALJ never affirmatively stated that Shilly did not meet the duration requirement.  Moreover, the ALJ explicitly rested her ruling on her findings that Shilly's depression resulted in only mild impairments.  As discussed herein, that aspect of the ALJ's decision is supported by substantial evidence.

that meets the duration requirement in § 404.1509 (longer or expected to be longer than a continuous period of at least 12 months), or a combination of impairments that is severe and meets the duration requirement, then she is not disabled.").

Here, Shilly dates the onset of his depression to January 2018, due to the cessation of his employment and the emotional distress that accompanied that change. (Tr. 386). Shilly, however, first complained of depression to a treating physician almost two years later, on September 5, 2019, when he treated at the Arab American Chaldean Council. (Tr. 15.) And, he testified that he stopped working because he couldn't stand more than 5 to 10 minutes before beginning to feel pain in his back, legs, and neck, not because of depression. (Tr. 48-49).

The ALJ looked at the "four broad areas of mental function set out in the disability regulations," and concluded, respectively, that Shilly's depression led to mild limitations in terms of his ability "in understanding, remembering, or applying information;" mild limitations in terms of his ability to "concentrate, persist, or maintain pace;" no limitations in terms of "interacting with others;" and no limitations in terms of his ability "to adapt or manage himself." (Tr. 13-14). The evidence in the record supports the ALJ's findings.

First, the ALJ noted that Shilly had "only been treating for depression for several months" at the time of the hearing, which was two years after Shilly's alleged onset date. (Tr. 13). The ALJ also specifically cited evidence in the record supporting her conclusion that Shilly faced minor or no limitations in each of the four areas of mental functioning cited above. *See* (Tr. 14). For example, the ALJ noted that although Shilly complained of memory issues, he was able to go to doctor's appointments, take medications, and drive.

8

(*Id.*)  The ALJ also noted that Shilly was a good historian regarding his health and prior work history.  (*Id.*)  Finally, the ALJ noted that the "medical records do not indicate problems with [Shilly's] short- or long-term memory."  (*Id.*, Tr. 210, 401).[3]  Similarly, although Shilly complained about issues with concentration, the ALJ again noted that Shilly was "able to drive, prepare meals, watch TV, manage funds, use the internet, and handle his own medical care." (Tr. 14).  She also highlighted that notes from medical examinations showed Shilly to "have intact concentration, good memory and judgment, appropriate psychomotor activity, and unremarkable perception."  (*Id.*, Tr. 207-11, 400-02).  Objective evidence from notes and reports filled out by medical professionals at the Arab American Chaldean Council further support the ALJ's conclusion.  Notes from Dr. Haddad stated that a depression assessment came back negative for Shilly. (Tr. 374.)  Moreover, while Dr. Haddad stated that Shilly exhibited a "depressed mood" "associated with sadness, pessimism, loss of social interest[,] psychomotor retardation, and some interference in appetite and sleep[,]" she never identified any concrete functional limitations flowing from his depressed mood.  (Tr. 371)

Shilly's challenges to these points all lack merit, and are discussed in greater detail below.  Briefly, however, while Shilly quotes extensively from the opinion of LLP Faten Bazzi, this Court cannot consider that opinion as it was not in the record in front of the ALJ prior to the ALJ issuing her decision.  Shilly also relies extensively on his own subjective complaints about his depression, but the ALJ reasonably determined to give limited weight

---

[3] Shilly also testified that his alleged memory problems began a year prior to the hearing date, but that hearing was two years after his alleged onset date.  (Tr. 61).

9

to Shilly's subjective complaints because they were inconsistent with the objective medical evidence available.  Finally, Shilly points to no limitations imposed on him as a result of his alleged depression that the ALJ failed to properly consider.  Thus, the Court finds that substantial evidence supports the ALJ's Step Two finding that Shilly's depression was non-severe.

Furthermore, any error on that issue would be harmless as long as the ALJ considered limitations from his non-severe depression when formulating Shilly's RFC.  *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020).  As explained below, although the ALJ addressed functional limitations caused by Shilly's depression as they relate to his RFC at an earlier point in her written decision, she adequately explained her rationale, which is supported by substantial evidence.

2. *Substantial Evidence Supports the ALJ's Weighing of the Medical Opinions and Testimony*

Shilly's arguments revolve around the assertion that the ALJ incorrectly weighed the different medical opinions and testimony in the record.  Namely, Shilly argues that the ALJ: a) erroneously discounted his subjective testimony as to his limitations; and b) erred in assigning greater weight to Dr. Robin Mika's opinion than she did Dr. Nabeel Toma's. Shilly's arguments fail because it is not this Court's role to re-weigh the evidence, and because Shilly at most shows a difference of opinion over which doctor's opinion is more persuasive, not that the ALJ's decision to credit Dr. Mika's opinion is not supported by substantial evidence.  As the Sixth Circuit has stated, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports

the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477.

### a. Shilly's Testimony

Shilly argues that the ALJ unreasonably discounted his hearing testimony. Shilly testified as to his subjective complaints regarding his limitations and symptoms. For example, he testified that "the main problem preventing him from working" was his "back pain, neck pain, and [his] depression," which caused him to not "feel good to go deal with [] people, because probably I'm not kind of happy to do something not good to them." (Tr. 54). Shilly testified to experiencing relatively intense pain, which he rated "around 8 to 9" out of ten in severity, and which he described as "too much pressure on my lower back and the pain is going down my legs. Numbness and tingling." (Tr. 62-63). As for his depression, Shilly answered the ALJ's prompt whether "he doesn't like to be around people" in the affirmative and stated that "that's the main thing" he was facing from his depression. (Tr. 56). He also testified that his depression was causing memory problems, stating that "sometime[s]. . . I want to remember something happen[ing] soon, I don't remember it right away. I have to think about it to get in my memory." (Tr. 61).

Shilly now argues that the ALJ improperly discounted that testimony by making an improper "credibility" assessment. That argument lacks merit.

SSR 16-3p governs evaluations of a claimant's symptoms. The Ruling states that the agency has "eliminat[ed] the use of the term 'credibility'" and instead "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *3 (Oct. 25, 2017). The ruling follows a two-step

11

process:

> First we must consider whether there is an underlying medically
> determinable physical or mental impairment(s) that could reasonably
> be expected to produce an individual's symptoms. . . Second, once an
> underlying physical or mental impairment(s) that could reasonably be
> expected to produce an individual's symptoms is established, we
> evaluate the intensity and persistence of those symptoms to determine
> the extent to which the symptoms limit an individual's ability to
> perform work-related activities[.]

*Id.* at *3.

The Ruling further states that "If we cannot make a disability determination or

decision that is fully favorable based solely on objective medical evidence, then we

carefully consider other evidence in the record in reaching a conclusion[.] *Id.* at 6.  This

evidence may include[] statements from the individual[.] *Id*.   As stated above, an

individual's testimony is not evaluated based on his "credibility."   Instead a claimant's

testimony is evaluated on "whether the statements are consistent with objective medical

evidence and the other evidence." *Id*.

In Shilly's case, the ALJ determined that his "medically determinable impairments

could reasonably be expected to cause the alleged symptoms," but that Shilly's "statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record[.]" (Tr. 17.)  Far

from a "credibility" determination regarding Shilly's character, however, the ALJ properly

focused on comparing Shilly's testimony regarding his symptoms with the objective

medical evidence and other evidence in the record.

In terms of his physical impairments (which Shilly addressed in only a paragraph or

two in his motion), the ALJ noted that on October 30, 2018, Shilly began seeing a physiatrist, Maria Ruiz, M.D., for back pain and numbness in his left leg. (Tr. 17). The ALJ noted that Shilly "exhibited some decreased range of motion in his neck and lower back." (*Id.*). The ALJ also noted that Shilly had an MRI a few months later, which "indicated disc bulging and endplate osteophyte formation with facet and uncovertebral joint hypertrophy at C5-C6 and C6-C7. There was also small disc bulging seen at C3-C4, C4-C5, and C7-T1. (Tr. 18, 263-64). Thus, the ALJ did not ignore evidence favorable to Shilly. However, the mere fact that MRI images show some "small disc bulging" does not mean the ALJ had to credit Shilly's testimony about the impact of his impairments on his functional abilities. Rather, the ALJ must evaluate all of the evidence in the record to reach a determination as to that matter. The ALJ did that here.

First, the ALJ noted that when Shilly began seeing Dr. Ruiz, "there were no signs of atrophy," and he was treated with Advil. (Tr. 17). And, the ALJ noted that when Shilly started physical therapy in March 2019, he rated his pain at only 5/10. (Tr. 18, 314, 344, 347). He reported getting "stronger" and "better," and gaining some better flexibility, and he was discharged after only a few months because he met both his short- and long-term goals, and had reduced his pain to a manageable level. (Tr. 321, 323, 325, 350, 352). The ALJ also noted that Shilly had started home exercises, which helped. (Tr. 18). Indeed, the ALJ noted that during one of his physical exams, Shilly indicated that he was running on a treadmill for thirty minutes a day, six days a week. (*Id.*). The ALJ also noted that examinations showed no evidence of atrophy or unsteady or protective gait. (Tr. 18, 55, 276-279, 314-315, 367). All of that constitutes substantial evidence in support of the ALJ's

weighing of Shilly's testimony as to his physical impairments.

Nor did the ALJ err in terms of her weighing of Shilly's testimony as to his mental impairments against the record evidence.  The ALJ noted that Shilly contended that he stopped working because of physical limitations, not mental ones, and that his depression arose only after he had stopped working.  (Tr. 17).  That is consistent with the ALJ's notation that, at the time of the hearing, Shilly had "only been treating for depression for several months."  (Tr. 13).  The ALJ also noted that despite Shilly's contentions about his inability to remember things and concentrate, he "could prepare meals, go to doctor's appointments, take medications, and drive," was a good historian when meeting with his doctors and answering their questions, and "watch TV, manage funds, use the internet, and handle his own medical care."  (Tr. 14).[4]  The ALJ also noted that the "medical records do not indicate any problems with [Shilly's] short- or long-term memory," and that "[o]n examination, [Shilly] was noted to have intact concentration, good memory and judgment, appropriate psychomotor activity, and unremarkable perception [. . .] [and] goal directed [thought process]."  (Tr. 14; *see also* Tr. 15 ("In addition, his Mental Status Examinations have been relatively unremarkable during each visit, except for his mood, which is consistently noted as depressed.").  These findings are borne out in the record.

The record contains notes from Dr. Luay Haddad and LLP Faten Bazzi, at the Arab American Chaldean Council, which is where Shilly's depression has been diagnosed and

---

[4] Shilly complains that the ALJ's recitation of these facts was unfair because he only cooked simple meals when his wife was otherwise occupied and that he only drove short distances.  This argument lacks merit.  The ALJ's decision did not overstate Shilly's capabilities in these regards, but merely pointed out that his ability to engage in them at all was arguably inconsistent with his testimony.

treated.  However, far from supporting Shilly's assertions that he was facing severe limitations from his depression, these notes are, at best, much more equivocal.  For instance, when Shilly first saw LLP Bazzi on September 5, 2019, he had an appropriate attitude, intact concentration, appropriate insight, good judgment, good short and long term memory, and was fully oriented and goal directed.  (Tr. 400-02).  And, although Dr. Haddad diagnosed Shilly with "major depressive disorder, single episode" at later appointments, the notes from those same appointments indicate that Shilly was screened for depression, yet tested negative. (Tr. 374, 386.)  And, although many categories on the form do not have any boxes checked, where boxes were checked, they were often normal. For instance, at this appointment on October 14, 2019, Shilly was found to be cooperative, and fully oriented with good judgment.  (Tr. 383-85).  The ALJ fairly discussed this evidence, noting that although Shilly presented with a depressed "mood" at these appointments, "his Mental Status Examinations have been relatively unremarkable . . ." and did not cause significant functional limitations.  (Tr. 15).

In light of the foregoing, substantial evidence supports the ALJ's finding that Shilly's testimony was not entirely inconsistent with the evidence on record as to the intensity, persistence, and limiting effects of the symptoms of his depression.

### b.  Weighing Doctor's Opinions

Shilly next argues that the ALJ improperly weighed the medical opinions of Dr. Robin Mika and Dr. Nabeel Toma.  Shilly rests his argument on Dr Toma's greater attention to non-exertional limitations from his non-severe (as held by the ALJ) depression. However, as discussed below, substantial evidence supports the ALJ's weighing of these

two opinions, and her decision to give less weight to Dr. Toma's opinion based on the anomalously strict exertional limitations she proposed.

The regulatory criteria for weighing medical opinions is set forth at 20 C.F.R. § 404.1520c. ALJs must rely on the following factors when evaluating medical opinions:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
> (3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section. . . .
>
> (4) Specialization. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
>
> (5) Other factors. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.

20 C.F.R. § 404.1520c(c) (2021).

The most important factors in this analysis are a medical opinion's supportability and consistency with other sources in the record. *Id.* at § 404.1520c(b)(2).

Here, the ALJ was confronted with two separate medical opinions.[5]  The first, by Shilly's treating physician, Dr. Nabeel Toma, found significantly more stringent limitations than the second, produced at the first level review of Shilly's claim by state agency medical consultant, Dr. Robin Mika.  The ALJ gave more weight to Dr. Mika's opinion, which Shilly argues was improper because Dr. Mika failed to account for non-exertional limitations caused by his depression and did not consider evidence of psychiatric symptoms in the record.  Shilly asserts that the ALJ should have instead given more credence to Dr. Toma's opinion, which he argues more fully accounts for limitations from his depression.

The Court cannot re-weigh the evidence, *see Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence.  That is solely the province of the [Commissioner].way"), and as long as the ALJ's decision to give greater weight to Dr. Mika's opinion is supported by substantial evidence it must stand.  As stated in the regulations, the most important factors are an opinion's consistency with the record as a whole and its supportability by reference to objective medical evidence supporting explanations.

The ALJ relied heavily on the consistency (or lack thereof) of the two opinions with the record.  Specifically, the ALJ found that the exertional and non-exertional limitations determined by Dr. Toma did not find support in the record.  As the ALJ noted, Dr. Toma proposed extremely strict limitations, stating:

---

[5] Shilly also cites a third opinion by LLP Bazzi.  However, as explained below, the Court cannot consider Dr. Bazzi's opinion because it was not part of the record before the ALJ.

> the claimant would be off task at least 20% of a given workday, would be incapable of even 'low stress' work, could only sit or stand for 15 minutes at a time, could only walk for a duration of 10 minutes at a time, would require unscheduled breaks throughout the workday, and would be incapable of lifting weight even less than 10 pounds. He further opined the claimant would be unable to move his head and neck in any direction.

(Tr. 19, Tr. 282-84 B4F 3-5.)

The ALJ found that Dr. Toma's opinion was "not persuasive because it [was] not entirely consistent with the medical evidence of record[,]" and that the limitations imposed by Dr. Toma were irreconcilable with evidence in the record that "[Shilly's] pain levels decrease after exercise, which included using the treadmill for 30 minutes at a time[;]" that "[Shilly] did well in physical therapy, which required lifting and exercises to strengthen his back and neck[;]" and that "[Shilly] only require[d] non-narcotic pain medication, such as Advil for pain relief." (Tr. 19, 273, 298, 313-368.) On the other hand, the ALJ found that Dr. Mika's opinion, that Shilly could perform light work, with some postural and manipulative limitations, was consistent with Shilly's ability to exercise six days a week and the fact that Shilly was able to treat his pain with non-narcotic painkillers and physical therapy, without further surgical intervention. (Tr. 18). The ALJ appropriately found that Shilly's "admissions and actions are indicators that he would be able to sustain work within the adopted [RFC]." (Tr. 18-19).

While Dr. Mika's opinion did not discuss limitations from Shilly's depression, the ALJ's finding that Dr. Mika's opinion was more consistent with the record as a whole was nevertheless reasonable considering that the ALJ had already explained why functional limitations resulting from Shilly's depression were unnecessary. (Tr. 14-15). Moreover,

in arguing that Dr. Toma's opinion was, in fact, more consistent with the whole record in the case, Shilly relies heavily on his own subjective testimony and an opinion by LLP Bazzi, who treated Shilly for depression.  This argument fails for two reasons.  First, as explained above, the ALJ reasonably concluded that Shilly's subjective complaints were inconsistent with the record evidence.  Second, the ALJ could not have erred by failing to consider LLP Bazzi's opinion because Shilly did not submit that opinion until *after* the ALJ rendered her decision.  Indeed, Bazzi's opinion did not even exist at the time of the ALJ's decision.  As the Appeals Council explained, "[t]he Administrative Law Judge decided your case through January 28, 2020[,]" but Bazzi's opinion was "dated February 21, 2020[.]" (Tr. 2.)  Because this Court's review of an ALJ's decision is limited to the record that was in front of the ALJ, Bazzi's post-decision opinion does not impact its substantial evidence review.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review.").  Moreover, Shilly made no argument that remand was appropriate under sentence six of 42 U.S.C. § 405(g), thus waiving that issue.[6]

---

[6] Even in his reply brief, Shilly did not make any developed argument for a sentence six remand, but instead merely wrote, "Defendant's arguments center largely on the more recent opinion of Dr. Bazzi which, while we assert is material to this case, Plaintiff did not have the opportunity to submit this opinion prior as it was not completed until the date reflected on the form, which is following the hearing." (ECF No. 13, PageID.494.)  Again, this waives any argument for a sentence six remand.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (internal quotations omitted).  Moreover, the suggestion by Shilly that the Commissioner misplaced his arguments lacks merit; it

3.      *Substantial Evidence Supports the ALJ's RFC Finding*

Shilly also argues is that the ALJ erroneously ignored his depression when formulating an RFC.  ALJs are required to consider all of a claimant's impairments, both severe and non-severe, when formulating an RFC. *Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *5 (July 2, 1996).  However, the bar to demonstrate that such consideration was made is not high on substantial evidence review.  In *Emard*, 953 F.3d at 851-52, the Sixth Circuit recently explained, "District courts in this circuit have held that an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p," and where the decision contains a "discussion of the functional limitations imposed by [the claimant's] nonsevere impairments . . ."  *Id.*

The ALJ here stated in her decision that, in formulating the RFC, she must consider all "consider all of the claimant's impairments, including impairments that are not severe[,]" and cited to SSR 96-8p. (Tr. 12).  And, at Step Two, the ALJ discussed the lack of any significant functional limitations as a result of Shilly's non-severe mental impairments.  (Tr. 13-14).  The ALJ went further, however, and explained that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by

---

was Shilly who, in his initial summary judgment motion, relied extensively on Dr. Bazzi's opinion. (ECF No. 9, PageID.440, 446-49, 454-56.)

itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." (Tr. 14-15).  Then, the ALJ provided an additional explanation for not including limitations based on Shilly's depression.  Specifically, the ALJ explained:

> . . . since starting treatment, the claimant has consistently appeared for visits with his counselors and has been compliant with his psychiatric medication regimen. The claimant's symptoms include feeling down and pessimistic, loss of social interest, and some interference with sleep and appetite.  He has never made any complaints of suicidal or homicidal ideation or psychotic symptoms.  In addition, his Mental Status Examinations have been relatively unremarkable during each visit, except for his mood, which is consistently noted as depressed.  The claimant's impulse control, judgment, thought content, thought process, psychomotor activity, affect, and speech are all within normal limits at each visit. In addition, his attitude is cooperative.
>
> While he has complained that Lexapro causes dizziness, this side effect is curbed taking the medication at night instead of in the morning (Hearing Testimony [Tr. 56]).  At his appointments, the claimant has not made any complaints of lack of focus or concentration, and has not reported any problems with memory.  There were also no complaints of feelings of aggression or paranoia noted in the records ([Tr. 369-403]).  As a result, the claimant has not substantiated that his alleged major depression causes any functional limitations . . . Lastly, there are no medical opinions in the file which address or substantiate any functional limitations related to his alleged mental impairments.

(Tr. 14-15).

As discussed above, the ALJ's findings are supported by the record evidence.  Thus, under *Emard*, substantial evidence supports the ALJ's handling of Shilly's depression.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 12)** be **GRANTED**, Shilly's Motion for Summary Judgment **(ECF No. 9)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: June 14, 2021                              s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                                             United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).   Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 14, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager